UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PATRICE M. WILLIAMS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-402-PRC |
| | ) | |
| UNITED STATES STEEL | ) | |
| CORPORATION, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Cease and Desist Denial of Regularly Scheduled Off Days and Vacation Days [DE 23], filed by *pro se* Plaintiff Patrice Williams on January 23, 2013, and on a Motion for a Temporary "Real" Sabbath Accommodation [DE 32], filed by Plaintiff on April 2, 2013. Defendant United States Steel Corporation filed a response to the Motion to Cease and Desist Denial of Regularly Scheduled Off Days and Vacation Days on February 11, 2013. Plaintiff filed a reply on March 6, 2013. Defendant did not file a response to the Motion for a Temporary "Real" Sabbath Accommodation, and the time to do so has passed.

**PROCEDURAL BACKGROUND**

Plaintiff Patrice Williams filed this suit on October 5, 2012, alleging that Defendant United States Steel Corporation violated— and continues to violate—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by failing to accommodate her religious practices and discriminating against her on account of her gender. On January 8, 2013, Defendant filed its Answer and Affirmatives Defenses. On April 18, 2013, the Court held a pretrial conference and determined that Plaintiff's Motion to Cease and Desist Denial of Regularly Scheduled Off Days and Vacation Days and her Motion for a Temporary "Real" Sabbath Accommodation were requests for a

1

preliminary injunction. The Court held an evidentiary hearing and, ruling from the bench, denied Plaintiff's motions. This Order is intended to provide the parties with a more complete explanation of the decision.

## FACTUAL BACKGROUND

Plaintiff Patrice Williams has been employed by Defendant United States Steel Corporation since October 2008 and remains currently employed as a crane operator. As a member of the United Steelworkers Union, the terms and conditions of Plaintiff's employment are governed by a collective bargaining agreement between the Union and US Steel. The CBA contains provisions governing overtime, wages, and seniority, among other things. Plaintiff is currently classified as a Labor Grade 2 employee under the CBA.

At the time Plaintiff applied for her current position, she was aware that US Steel operates 24 hours a day, 365 days a year, and that crane operators are scheduled to work on a neutral, rotating shift basis. Under this system, the work schedule for crane operators changes from week-to-week with respect to the shifts worked (7:00 a.m to 3:00 p.m., 3:00 p.m. to 10 p.m., or 11:00 p.m. to 7:00 a.m.) and the days of the week worked (which may included Saturdays and Sundays).

The facts giving rise to this litigation began on September 7, 2011. On that day, Plaintiff, a Seventh-Day Adventist, presented a letter to her supervisor requesting that she not be scheduled to work on the Sabbath. Seventh-Day Adventists believe that the Sabbath runs from sundown Friday to sundown Saturday. One tenet of Plaintiff's religion is that work cannot be performed on the Sabbath. Although Plaintiff has been a Seventh-Day Adventist her whole life, she became more devout in 2011 and adopted the practice of abstaining from work on the Sabbath. Plaintiff's supervisor told her that she could "call-off" (i.e., inform Defendant that she would not work her

2

assigned shift) whenever she was scheduled to work on the Sabbath. This accommodation was already being provided to DeJuan Lee, another employee in Plaintiff's department.

However, on October 6, 2011, Plaintiff and Mr. Lee were informed that the accommodation was no longer available. Going forward, if they wanted to avoid working a scheduled shift on the Sabbath, they would be required to use a vacation day or find a co-worker to cover the shift. Following this change in policy, Mr. Lee, who was a Labor Grade 1 employee earning less than Plaintiff, was no longer scheduled to work on the Sabbath. Plaintiff, however, continued to be scheduled on the Sabbath when it was her turn under the rotating schedule.

In the sixteen months since Plaintiff was told that she could no longer call-off on the Sabbath, Plaintiff has not worked on the Sabbath. She has accomplished this through a combination of swapping shifts with co-workers, using vacations days, using sick days, scheduling doctors appointments, and other means.

In 2012, Plaintiff filed, in addition to this suit, a grievance against US Steel with the Union. Plaintiff's grievance seeks to prohibit Defendant from scheduling her to work on the Sabbath. The grievance is currently pending at step two of a three-step procedure.

**ANALYSIS**

Plaintiff seeks a preliminary injunction that, for the duration of this litigation, prohibits Defendant from scheduling her to work on the Sabbath, or, in the alternative, from requiring her to work on the Sabbath when the rotating schedule provides that she is not scheduled.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In order for the injunction to be issued, Plaintiff must demonstrate "that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor,

3

and that an injunction is in the public interest." *Id.* at 20. The first two elements—likelihood of success on the merits and likelihood of irreparable harm—are threshold requirements. *See Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865 872-73 (7th Cir. 2009). If Plaintiff satisfies the threshold requirements, the Court must "weigh[ ] the balance of harm to the parties if the injunction is granted or denied and also evaluate[ ] the effect of an injunction on the public interest." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). Because Plaintiff has failed to satisfy the threshold requirements, her request for injunctive relief is denied.

### A. Likelihood of Success on the Merits

In order for the requested injunction to issue, Plaintiff must establish a likelihood that she will eventually prevail on the merits of one of her Title VII claims. The Seventh Circuit Court of Appeals has stated that "the threshold for establishing likelihood of success is low." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011). In order to meet the requirement, a movant need only present "a plausible theory on the merits—not necessarily a winning one." *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 726 (7th Cir. 2009). Despite the low bar, Plaintiff has failed to demonstrate that she is likely to prevail on the merits of either her failure to accommodate or gender discrimination claim. The Court will address each in turn.

*1. Failure to Accommodate*

Plaintiff's first basis for her requested injunction is that Defendant has violated—and continues to violate—Title VII by failing to reasonably accommodate her religious practice of abstaining from work on the Sabbath. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

4

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2. This prohibition includes "an implied duty to accommodate employees' religions." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013); *see also Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) ("Title VII . . . require[s] an employer to make reasonable efforts to accommodate the religious practices of employees."). In order for Plaintiff to prevail on her claim, she must first make out a prima facie case, which requires her to demonstrate that (1) her religious practice conflicts with an employment requirement, (2) she brought the religious practice to Defendant's attention, and (3) the religious practice "was the basis for her discharge or other discriminatory treatment." *Porter*, 700 F.3d at 951 (citation and internal quotation marks omitted). If she is able to make out a prima facie case, the burden shifts to Defendant to prove that it provided Plaintiff a reasonable accommodation or that "any reasonable accommodation would result in undue hardship." *Id.*

Defendant does not dispute that Plaintiff has satisfied the first two elements of a prima facie case, and the Court will assume that she has done so. This leaves the question of whether Plaintiff's refusal to work on the Sabbath led Defendant to subject Plaintiff to discriminatory treatment (there is no question that she remains employed by Defendant). Plaintiff conceded at the evidentiary hearing that she has not been discharged, demoted, or suffered a decrease in her rate-of-pay. The only evidence of discriminatory treatment put forth by Plaintiff is that she was issued a three-day suspension three months after her initial request for a Sabbath accommodation. However, the facts surrounding her suspension support the conclusion that Plaintiff was suspended as a result of having violated a plant safety regulation. Plaintiff has failed to provide the Court with sufficient evidence to support a finding that the reason for the suspension was pretextual.

5

Even if Plaintiff were able to make out a prima facie case, the Court would still find that Plaintiff is not likely to succeed on the merits of her failure to accommodate claim. Leaving aside the more difficult question of whether Defendant reasonably accommodated Plaintiff's religious practices by allowing her to swap shifts with co-workers, the Court finds that any reasonable accommodation would cause Defendant to suffer undue hardship. The Supreme Court has stated that even a de minimis cost can create an undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977). Here, accommodating Plaintiff's religious practice would require Defendant to incur more than a de minimis cost. Plaintiff conceded at the evidentiary hearing and in her submissions to the Court that there is currently a shortage of crane operators qualified to operate her crane within her department. Plaintiff proposes that Defendant could solve this problem and never schedule her to work on the Sabbath by removing employees who are qualified to operate her crane from other departments. The issue with this solution is that Plaintiff is asking Defendant to remove individuals with more seniority from their preferred positions in order to accommodate her religious practices. If a reasonable accommodation requires a deviation from an established seniority system, courts have generally considered the accommodation to constitute undue hardship. *See Hardison*, 432 U.S. at 82 (stating that an employer "was not required by Title VII to carve out a special exception to its seniority system in order to help [the employee] to meet his religious obligations). A second reason to find that any accommodation would cause undue hardship can be found in Plaintiff's concession at the evidentiary hearing that Defendant is forced to pay premium wages in order to cover for Plaintiff when she fails to work on the Sabbath as scheduled. This has also been found by courts to constitute undue hardship. *Id.* at 84.

The Court interprets Plaintiff to argue that granting her the requested accommodation would not cause an undue hardship because Defendant is already making an identical accommodation to

Mr. Lee. However, Mr. Lee and Plaintiff are not comparable employees. Plaintiff is a Labor Grade 2 employee. Mr. Lee is a Labor Grade 1 employee. Plaintiff thus has a higher rate-of-pay and her position involves greater skill and responsibility. Further, as is just discussed above, there is currently a shortage of employees in Plaintiff's department who are capable of performing her job. Thus, the fact that Defendant is able to accommodate Mr. Lee's request to never be scheduled to work on the Sabbath does not provide any support for the notion that Defendant could just as easily accommodate Plaintiff's request. For the reasons stated above, the Court finds that Plaintiff is unlikely to prevail on the merits of her failure to accommodate claim.

*2. Gender Discrimination*

Plaintiff's second ground for injunctive relief is that Defendant has violated—and continues to violate—Title VII's ban on gender discrimination by accommodating Mr. Lee's religious practices while denying her an identical accommodation. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2. A plaintiff alleging gender discrimination under Title VII may prove the discrimination under either the "direct" method or the "indirect, burden-shifting" method. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547-48 (7th Cir. 2011). The fact that Plaintiff has failed to specify which method she relies on in bringing her gender discrimination claim is unimportant because she has not marshaled sufficient evidence to establish gender discrimination under either method.

Plaintiff's sole piece of evidence supporting her claim of gender discrimination is that Mr. Lee's religious practices were accommodated while hers were not. Under the direct method, Plaintiff would have to produce either (1) evidence that— standing alone— would establish that she

7

was denied an accommodation on account of her gender (e.g., the decisionmaker's admission that gender discrimination was the cause for the denial), or (2) a "convincing mosaic of circumstantial evidence from which a reasonable juror could infer intentional discrimination by the decisionmaker." *Id.* at 548. Plaintiff's evidence fails to establish a likelihood of success under either of these options. If Plaintiff were to proceed under the indirect method, she would have to make out a prima facie case by demonstrating that "(1) she belongs to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected class received more favorable treatment." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). Assuming for the purposes of this Order that Plaintiff could satisfy the first three elements, Plaintiff has not provided the Court with sufficient evidence that she and Mr. Lee are similarly situated. At the very least, Plaintiff needed to demonstrate that Mr. Lee's seniority within the Labor Grade 1 list was similar to her own (49th out of 56 Labor Grade 2 employees). Without this information, it is impossible to determine whether he was given preferences over more senior employees or whether Mr. Lee has sufficient seniority to receive a preferential schedule. Accordingly, Plaintiff has failed to demonstrate a likelihood of success on her gender discrimination claim and has failed to meet the first threshold element needed for the issuance of a preliminary injunction.

### B. Likelihood of Irreparable Harm

Even if the Court were to find that Plaintiff has demonstrated a likelihood of success on the merits, Plaintiff has not demonstrated that she is likely to suffer irreparable harm in the absence of the preliminary injunction. Irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial." *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001). Further, "the irreparable harm must . . . be likely. That is, there must be more than a mere

possibility that the harm will come to pass." *Michigan*, 667 F.3d at 769 (citing *Winter*, 555 U.S. at 20). Although Plaintiff has not explicitly described the irreparable harm that she will suffer without injunctive relief, the Court understands her to argue that being forced to work on the Sabbath in violation of her religious beliefs would constitute irreparable harm. The Court will assume for the purposes of this Order that this would constitute irreparable harm. The problem for Plaintiff is that she has failed to demonstrate that this harm is likely to occur during the pendency of the litigation.

In the eighteen months since Plaintiff first requested a Sabbath accommodation, she has never worked on the Sabbath despite frequently being scheduled to do so. Plaintiff has managed this through a mix of swapping shifts with colleagues, using vacation days, using sick days, and other means. At the evidentiary hearing, Plaintiff presented no evidence that this situation is likely to change before her suit is resolved. Without some indication that Plaintiff is going to be put to a decision between her job or her religious beliefs, the Court cannot find a likelihood of irreparable harm. Accordingly, the Court finds that Plaintiff has failed to satisfy the second threshold requirement for a preliminary injunction and, consequently, denies Plaintiff's motions.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Cease and Desist Denial of Regularly Scheduled Off Days and Vacation Days [DE 23] and the Motion for a Temporary "Real" Sabbath Accommodation [DE 32].

SO ORDERED this 20th day of September, 2013.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record
     *Pro se* Plaintiff